[Civ. No. 66914. Second Dist., Div. Seven. Aug. 1, 1983.]

PATRICIA GOMEZ et al., Plaintiffs and Appellants, v.
TICOR, Defendant and Respondent.

MARIA AYERBE, a Minor, etc., Plaintiff and Appellant, v.
TICOR, Defendant and Respondent.

**COUNSEL**

Charles J. Fleishman and Cornell J. Price for Plaintiffs and Appellants.

Knapp, Petersen & Clarke, Reginald D. Greene and Cynthia A. Trangsrud for Defendant and Respondent.

**OPINION**

**SCHAUER, P. J.**—Plaintiffs, Patricia and Claudia Gomez and Maria Ayerbe, appeal from the summary judgment granted defendant Ticor. The is-

sues presented are the foreseeability of armed robbery in an office building's commercial parking structure and the existence of minimal precautions to protect the patrons thereof.

On January 31, 1980, Dario Gomez was in defendant's building visiting the office of his attorney. Gomez left this office at approximately 8:45 p.m. and took an elevator to the lobby. Once in the lobby, he passed the security guards' booth and then took either another elevator or a flight of stairs to defendant's garage, where he had paid to park his car. He entered the garage as an armed robbery was occurring and was shot by one of the robbers. Gomez died a few weeks later as a result of the gunshot wounds.

On May 23, 1980, Gomez' widow and child, Patricia and Claudia, filed a wrongful death action against Ticor. On November 23, 1980, Gomez' niece, Maria Ayerbe, filed a similar suit against Ticor. Both suits alleged that Ticor failed to take reasonable precautions to prevent violent attacks on patrons of its parking structure. On February 3, 1981, the cases were consolidated.

In support of their allegation of negligence, plaintiffs introduced affidavits attesting to the general unsafe character of the neighborhood, as well as evidence that fourteen thefts and four other nonviolent crimes had occurred in the building in the three years prior to the attack. In addition, plaintiffs provided declarations by Ticor employees claiming that the security system monitoring the parking structure was not functional on the night of the attack. Specifically, these declarations allege (1) that the intercom connecting the parking attendant with the security booth in the lobby was habitually turned off at the lobby console, and (2) the camera monitoring the entry ramps by which the assailants entered the parking structure was not working. Finally, plaintiffs alleged that the gate to the entry ramp was commonly left open at night, in spite of requests from patrons that it be locked at 7 p.m. for safety reasons.

The trial court granted summary judgment for defendant. Plaintiffs appeal, contending that the trial court erred in granting summary judgment.

I

*Standards for Review of Summary Judgment*

■ The summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. (*Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264].) Summary judgment is properly granted only when the evidence in

support of the moving party establishes that there is no issue of fact to be tried. (Code Civ. Proc., § 437c; *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].)

■ "The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory." (*Lipson* v. *Superior Court, supra,* 31 Cal.3d at p. 374.) ■ "The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion." (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, at pp. 436-439 [74 Cal.Rptr. 895, 450 P.2d 271].)

## II

### *The Determination of Duty*

■ Liability founded upon a claim of negligence cannot exist unless a duty of care is owed by the alleged wrongdoer to the person injured or to the class of which the injured person is a member. (*Rodriguez* v. *Bethlehem* (1974) 12 Cal.3d 382, 399 [115 Cal.Rptr. 765, 525 P.2d 669]; *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; Civ. Code, § 1714.) ■ In California, it is well settled that an owner of land held open for business purposes may have a duty to protect visitors from the wrongful acts of third persons. (*Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793].) Whether such a duty in fact exists is a question of law to be determined separately in each case, based on the weighing of a number of factors. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 45-46 [123 Cal.Rptr. 468, 539 P.2d 36].) Most important among these factors is the foreseeability of the harm. (*Id.* at p. 46. *Musgrove* v. *Ambrose Properties* (1978) 87 Cal.App.3d 44, 52 [150 Cal.Rptr. 722].) Unlike duty, foreseeability is a question of fact, which must be decided by the jury in any case about which reasonable minds can differ. (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 56-60 [192 Cal.Rptr. 857, 665 P.2d 947].) Accordingly, we first decide whether plaintiffs have raised a triable issue of foreseeability.

## III

### *A question of fact remains as to the foreseeability of the attack.*

■ Noting that no similar violent incident had occurred on its premises, defendant contends that the attack on Gomez was not foreseeable. In response, plaintiffs introduce evidence of the general "high-crime" character

of the neighborhood and of specific instances of burglary, theft and vandalism in the building. This evidence, plaintiffs conclude, shows that the attack on the decedent was, in fact, foreseeable.

Standing alone, plaintiffs' evidence of the frequency of violent crimes in the neighborhood does not establish sufficient foreseeability to warrant the imposition of a duty. As the court in *7735 Hollywood Blvd. Venture* v. *Superior Court* (1981) 116 Cal.App.3d 901, 906 [172 Cal.Rptr. 528], noted: "Anyone can foresee that a crime may be committed anywhere at any time. But that foreseeability which the owners of rental property or the proprietors of public premises share with the public at large, does not, per se, impose a duty on such property owners or proprietors to install a 'security device' which meets a lay jury's concept of adequacy." Plaintiffs' evidence, however, goes beyond mere allegations that the relevant neighborhood was dangerous. Uncontroverted statements presented to the trial court show that no less than sixteen acts of theft or vandalism occurred on defendant's premises in the three years prior to the shooting of Gomez. Acts of theft and vandalism thus appear to have been foreseeable in the parking structure. Accordingly, it may also have been foreseeable that a patron, returning to his or her car at an inopportune moment and interrupting such an act of theft or vandalism, would be subject to violent attack by the thief or vandal. The foreseeability of such an attack is, at the least, a matter over which reasonable minds may differ and thus becomes a question of fact to be determined by the jury.[1] (Cf. *Wingard* v. *Safeway Stores, Inc.* (1981) 123 Cal.App.3d 37, 41-42 [176 Cal.Rptr. 320].)

Furthermore, in its very operation of a parking structure, defendant may be said to have created "an especial temptation and opportunity for criminal misconduct," thus increasing the foreseeability of the attack. (Prosser, Torts (4th ed. 1971) p. 174.) In making this observation we note the unique nature of a parking complex, which invites acts of theft and vandalism. In such structures, numerous tempting targets (car stereos, car contents, the cars themselves) are displayed for the thief; high walls, low ceilings and the absence of the cars' owners allow the thief or vandal to work in privacy and give him time to complete his task. Such circumstances increase the likelihood of criminal misconduct. In addition, the deserted, labyrinthine nature of these structures, especially at night, makes them likely places for robbers and rapists to lie in wait. Robbery, rape, and violent consequences to anyone who interrupts these crimes, may thus also be foreseeable.

---

[1] In the case at bench, decedent returned to his car during an armed robbery, rather than such an act of theft or vandalism. However, "it is settled that what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence." (*Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at pp. 57-58.) Here, the fatal incident fell within the scope of the alleged foreseeable harm, i.e., attack on a patron who interrupts a criminal act.

The California Supreme Court has recently reiterated that "'foreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct.'" (*Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at p. 57, quoting 2 Harper & James, Law of Torts (1956) § 18.2, p. 1020.) Parking structures are relatively new fixtures in "the setting of modern life." Accordingly, we are not bound by any specific precedent in determining whether attacks on patrons of these structures are foreseeable. Rather, this determination must come as the result of a realistic appraisal of the foreseeability of crime in any such structure; such an appraisal is the jury's task.

## IV

*Plaintiffs' allegation of foreseeability, if confirmed by the trier of fact, will support the finding of a minimal duty of care.*

Foreseeability is but one element to be considered in determining whether a duty exists in a particular situation. The other factors to be balanced in determining the existence of duty were summarized as follows in *Rowland* v. *Christian, supra,* 69 Cal.2d at page 113: "[T]he degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." Otherwise stated, "the magnitude of the harm likely to result from defendant's conduct must be balanced against the social value of the interest which he is seeking to advance, and the ease with which he may take precautions to avoid the risk of harm to plaintiff." (*Musgrove* v. *Ambrose Properties, supra,* 87 Cal.App.3d at p. 53.) This balancing must be conducted anew in each case, based on the factors present in that case. (*Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d at p. 56.)

In this balancing process, foreseeability is an elastic factor. (2 Harper & James, *supra,* § 18.2, at p. 1026.) The degree of foreseeability necessary to warrant the finding of a duty will thus vary from case to case. For example, in cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. (See, e.g., *Rogers* v. *Jones* (1976) 56 Cal.App.3d 346, 352 [128 Cal.Rptr. 404].) On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be

required. (See, e.g., *Musgrove* v. *Ambrose Properties, supra,* 87 Cal.App.3d at pp. 52-53.)

Defendant argues that the level of foreseeability alleged in this case is not sufficient to establish a duty to guard against violent acts by third parties. Citing an impressive line of cases, defendant asserts that there can be no such duty in the absence of a high degree of foreseeability, evidenced by "prior similar events." (See, e.g., *Wingard* v. *Safeway Stores, Inc., supra,* 123 Cal.App.3d at pp. 42-43; *7735 Hollywood Blvd. Venture* v. *Superior Court, supra,* 116 Cal.App.3d at pp. 904-906; *Jamison* v. *Mark C. Bloome Co.* (1980) 112 Cal.App.3d 570, 579-580 [169 Cal.Rptr. 399]; *Totten* v. *More Oakland Residential Housing, Inc.* (1976) 63 Cal.App.3d 538, 543-546 [134 Cal.Rptr. 29]; *Rogers* v. *Jones, supra,* 56 Cal.App.3d at pp. 350-352.) Plaintiffs respond to this contention by citing several cases which hold that "prior similar events" are *not* a necessary prerequisite to the imposition of a duty. (See, e.g., *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741 [87 Cal.Rptr. 376, 470 P.2d 360]; *Kwaitkowski* v. *Superior Trading Co.* (1981) 123 Cal.App.3d 324, 329 [176 Cal.Rptr. 494]; *Musgrove* v. *Ambrose Properties, supra,* 87 Cal.App.3d at p. 52.)

In examining this apparent conflict, we note that none of the cases cited by either side was decided solely on the basis of foreseeability. Each of these cases, in fact, contains an explicit balancing of *several* of the factors relevant in determining duty. It would thus be inappropriate for us to isolate the balance struck in any one of these cases and crystalize that balance into a steadfast rule that "prior similar events" are, or are not, required. Instead, we examine the balancing process undertaken in these cases before determining whether the foreseeability alleged here justifies the imposition of a duty.

In *Totten* v. *More Oakland Residential Housing, supra,* 63 Cal.App.3d 538, plaintiff, who was visiting the laundry room of defendants' apartment complex, was injured when a gunfight broke out between two other visitors. In holding that defendant had no duty to protect plaintiff from such attack, the court emphasized four of the traditional criteria. First, it noted that there was no "close connection between [defendant's] conduct and the injury suffered" since the incident could not have been prevented "even if [defendant] had employed a security guard." (*Id.* at p. 545.) Second, the court found that a duty to prevent such incidents would place an "extremely onerous" burden on defendant and the community. (*Id.* at p. 545.) Third, the court stated that the "proposed duty and the measures to be applied in discharge of the duty defy exact delineation and suffer from inherent vagueness." (*Id.* at p. 546.) Fourth, in the context of these other factors, the

court held that no duty existed in the absence of a higher degree of foreseeability, i.e., prior similar events. (*Id.* at pp. 543, 545, 547.)

The *Totten* court thus found that the duty proposed there was onerous, vague and probably impossible to fulfill; such a duty, the court concluded, should only be imposed when prior events make the harm highly foreseeable.

Similar reasoning is seen in other cases. Thus in *Rogers* v. *Jones, supra,* 56 Cal.App.3d 346, plaintiff, who was attacked by a fan at the San Diego stadium, sued the stadium's security service, alleging a duty to prevent such attacks. The court held that the defendant had taken sufficient security measures and that precautionary measures necessary to prevent the incident. would be "totally unreasonable and beyond the requirements of ordinary care," necessitating one guard for every fan. (*Id.* at p. 352.) The court held that the harm was not sufficiently foreseeable to justify such an onerous duty.

Likewise, in *7735 Hollywood Blvd. Venture* v. *Superior Court, supra,* 116 Cal.App.3d 901, plaintiff, who was raped in her apartment, sued her landlord, alleging that he had not installed lighting and security devices sufficient to prevent the attack. The court emphasized the loose connection between defendant's conduct and the attack, noting that the attack might well have occurred even if defendant had provided bright lighting. The court also emphasized the vagueness of the proposed duty: "If such a duty could be said to exist, the questions that would logically follow are of what candle power? and in what areas? To ask the questions is to demonstrate the futility of attempting to impose and define such a duty." (*Id.* at p. 905.) The court then held that plaintiff had not alleged sufficient foreseeability to justify the vague and onerous duty which she sought to impose.

Similar balancing of foreseeability, burdensomeness, vagueness and efficacy can be seen in numerous cases where no duty has been found. (See, e.g., *Jamison* v. *Mark C. Bloome Co., supra,* 112 Cal.App.3d 570, 580-581; *Nevarez* v. *Thriftimart, Inc.* (1970) 7 Cal.App.3d 799, 806 [87 Cal.Rptr. 50].)

The balancing process, of course, also occurs in cases where duty has been found to exist. Thus, in *Kwaitkowski* v. *Superior Trading Co., supra,* 123 Cal.App.3d 324, plaintiff, who was raped in the common entryway of her apartment, sued her landlord, alleging that the lock to the common hallway was broken at the time of the attack and that a robbery had occurred previously in the same hallway.

While noting that the prior robbery increased the foreseeability of the attack on Mrs. Kwaitkowski, the court held that "[f]oreseeability does not require prior identical or even similar events." (*Id.* at p. 329.) The court went on to find that the plaintiffs had alleged sufficient facts to justify imposition of a duty of care upon the landlord. In distinguishing *Hollywood,* the court noted: "The *Hollywood* case is inapposite, as it involved only the landlord's duty to install and maintain lighting outside the plaintiff's apartment door for security purposes. The instant case involves a defective lock on the lobby door that provided easy access to strangers. As the court noted in *Hollywood,* the utility of a light outside the door was questionable. Here, a properly functioning front door lock is a vital first line of defense." (*Id.* at p. 333.) The vague and onerous duties which plaintiffs sought to impose in cases such as *Totten* and *Hollywood* must thus be compared with the minimal duty proposed in *Kwaitkowski*—the duty to replace a lock and thus provide a "vital first line of defense" against intruders. A lesser degree of foreseeability is required when the proposed duty is minimal, i.e., when it involves the taking of simple, effective, easily defined steps. (See also *Musgrove* v. *Ambrose Properties, supra,* 87 Cal.App.3d at p. 52.)

■ With these criteria in mind, we examine the factors present in the case at bench.

As discussed above, plaintiffs have introduced sufficient evidence to create a question of fact for the jury as to the foreseeability of the attack on Gomez. This evidence, however, does not allege instances of prior assaults on the premises. Thus, the foreseeability alleged here, if confirmed by the jury, will support a minimal duty to provide only the "first line of defense" spoken of in *Kwaitkowski*. The attack was not sufficiently foreseeable to justify vague and onerous duties such as those rejected in *Totten* and *Hollywood*.

In the case at bench, then, defendants' duty, if such a duty existed at all, was to provide a "first line of defense." In the context of large, commercial parking structures, such a duty is indeed minimal and is not vague, onerous, or ineffective.

The court in *Hollywood, supra,* 116 Cal.App.3d at page 905, aptly observed that "[n]o one really knows why people commit crime, hence no one really knows what is 'adequate' deterrence in any given situation." We find, however, that the peculiar attraction which a large commercial building's unattended parking structure poses for the criminal may necessitate some minimal human or mechanical means of protecting patrons. Unlike the lightbulbs spoken of in *Hollywood,* such minimal precautions are certain to have an appreciable effect in preventing crimes and in warning patrons, such as

the decedent here, when a crime is in progress. Indeed, we are convinced that a monitored parking complex is an infinitely safer place than one which is vacant and unattended. Furthermore, these minimal measures will not place an onerous burden upon defendant or society. For example, had they been operational and effectively deployed, the security measures employed in defendant's building would have exceeded the level of precautions required to fulfill this duty. Finally, this minimal duty is not excessively vague. True, the duty may be fulfilled by various means, and the sufficiency of these means may often be decided by "a lay jury, after the fact." (*Id.* at p. 905.) We have faith, however, in the capability of the jury to carry out instructions and limit its inquiry to deciding whether the requisite *minimal* duty has been satisfied.

We thus hold that, if plaintiffs prove the degree of foreseeability which they have alleged, defendant owed the decedent a minimal duty of care.

Finally, we examine the evidence presented at the summary judgment hearing to determine whether the uncontroverted facts established that the defendant fulfilled a minimal duty of care. The papers presented on summary judgment show that defendant had a complex security system. Plaintiffs introduced evidence, however, that the system was not functional on the night of the assault. From the papers before us, we are unable to determine whether the precautions which *were* functional on that night provided a "first line of defense" against intruders. The record, in fact, contains several factual contradictions on this point. It is unclear, for example, whether the intercom, when turned off, was sufficiently functional to permit the parking attendant who was on duty at the time of the robbery to sound an alarm or make a call for help. Nor can we detect whether this attendant was a guard or a mere ticket-taker, or what training, if any, he had received to prepare him for criminal conduct in the parking structure. Moreover, the evidence received on the summary judgment does not specify the number of guards at the building or their locations at the pertinent time.

Plaintiffs have thus introduced evidence that defendant failed to take minimal precautions to protect the decedent from the attacks of third parties. Two clear factual issues therefore exist for determination by a trier of fact: (1) whether the attack on decedent was in fact foreseeable and, if it was, (2) whether defendant took minimal precautions to protect decedent from such attack. Accordingly, under the standard set forth in *Lipson* v. *Superior Court, supra,* at page 374, triable issues of fact remain and summary judgment was improperly granted.

The summary judgment is reversed.

Thompson, J., and Johnson, J., concurred.

A petition for a rehearing was denied August 22, 1983.