[Civ. No. 28677. Fourth Dist., Div. One. June 14, 1984.]

RICHARD LEE COHEN, Plaintiff and Appellant, v.
SOUTHLAND CORPORATION et al., Defendants and Respondents.

COUNSEL

O'Dorisio, Wedell & Wade and Jeffrey P. Wade for Plaintiff and Appellant.

Stutz, Rentto, Gallagher & Artiano, Robert E. Gallagher, Jr., Maureen L. Shellove, Post, Kirby, Noonan & Sweat, R. Bruce Wayne and Sandra L. Lackey for Defendants and Respondents.

## OPINION

**STANIFORTH, Acting P. J.**—Plaintiff Richard Lee Cohen questions by this appeal the correctness of a summary judgment entered in favor of store owner Southland Corporation, its Linda Vista Road 7-Eleven store franchisee, James R. Simmons and its employee, Timothy G. Wolfe, all defendants in this personal injury action. The dispositive issues are (1) whether under the evidence offered in the motion, foreseeability remained a question of fact for a jury; and (2) whether defendants established as a matter of law they have fulfilled any duty of care owed. (*Bigbee* v. *Pacific Tel & Tel. Co.* (1983) 34 Cal.3d 49, 52 [192 Cal.Rptr. 857, 665 P.2d 947].)

### FACTS

In the early morning hours of May 14, 1978, Cohen drove into the parking lot of the Linda Vista Road 7-Eleven store. He intended to buy a sandwich. While still in his car, Cohen was approached by a man displaying a revolver. He stated he intended to rob the store, take Cohen hostage and use Cohen's car as the getaway vehicle. The man proceeded into the store, with Cohen following. The clerk on duty that night was defendant Wolfe. Once inside, the robber approached Wolfe at the counter and displayed the gun. Cohen then seized the robber from behind. In the ensuing struggle the man shot Cohen in the stomach. Wolfe, observing the struggle, retreated to the back office, barricaded its door and did not emerge until the police arrived. The assailant escaped and remains at large.

### TRIAL COURT PROCEEDINGS

Cohen filed a negligence action against Southland, Simmons and Wolfe. Southland's demurrer to Cohen's complaint was sustained with leave to amend. The amended complaint alleged defendants negligently failed to protect store patrons from assault or other threatening behavior of would-be robbers. The complaint also charged Wolfe negligently and carelessly failed to aid Cohen after Cohen was shot.

Defendants moved for summary judgment. In support of the motion, Southland offered the declaration of Edward Perkins, assistant director of 7-Eleven store security. Perkins asserted—based on his review of Southland's files of all criminal incidents in franchise stores—there was a single

criminal incident at the Linda Vista Road store between February 1, 1972, and May 14, 1978. This was a noninjury armed robbery which occurred December 3, 1976. Perkins also detailed Southland's policy of offering an extensive security program to franchisees, including continuing education in robbery prevention technique and methods for dealing with in-progress robberies. He suggested 7-Eleven stores regularly use security devices such as strong boxes for excess cash, warning labels on store windows advising of minimal cash on hand, and a balanced lighting system allowing store clerks to observe outside activities and persons outside to view activities within. Additionally, the stores customarily stack merchandise to a level of not more than four and one-half feet to allow unobstructed vision of the store's interior and parking lot.

Perkins mentioned Simmons had installed a video camera and recording device to monitor cash register sales; he did not suggest Simmons had participated in Southland's extensive security training program, nor did he state *the Linda Vista Road 7-Eleven store* used the customary security devices he detailed.

Declarations of defendants Simmons and Wolfe also were the basis for the motion. Simmons claimed from the date of his ownership of the Linda Vista Road store franchise, July 1976 to May 14, 1978, there had been a single noninjury criminal incident—"a situation where a man demanded and received the money from the cash register"—not involving a weapon. He stated at the time of the incident the interior of the store and the parking lot were equipped with lights, the store had a video-surveillance system and a window sign indicating a limited amount of cash was kept on hand at night. He also noted a police substation is located one-half mile from the store. During the late night hours the store is visited by police on an average of once an hour on an irregularly timed basis.

Wolfe stated the video-surveillance system was in operation the night of the incident and the interior of the store and the parking lot were illuminated. He also stated he did not notice the robber had a gun until the robber stepped to the store counter. At the same moment Cohen grabbed the robber from behind. Wolfe then related what happened next: "The plaintiff and the suspect struggled, knocking the cash register to the ground. At that point, I stepped back to get out of the way of the cash register and after taking two or three steps backward, I heard a shot. I did not see the gun go off. After hearing the shot, I ran to the back room of the store and locked the door. The back room had a television monitor that was linked to the camera device which was in the area of the cash register. On the television monitor, I could see the cash register area and a portion of the aisles of the store. I feared that the gunman was going to come into the back room so I barri-

caded the door with a filing cabinet. After barricading the door, I looked back on the television monitor and I did not see the suspect. I did not know whether or not the suspect was still in the store because the camera did not view all of the interior of the store, but rather only the area around the cash register and front door. I therefore did not use the telephone that was in the back room for fear the suspect would hear me. I continued to look at the television monitor and saw the plaintiff get up, walk behind the counter, and then walk toward the front door. A car drove up and then drove away. I then observed another customer walk into the store, and walk behind the counter and use the telephone. Approximately three to five minutes after the shooting, I observed on the television monitor that the police arrived. I picked up the telephone extension in the back room and talked with the police dispatcher who then informed the investigating police officer that I was in the back room. At that point I opened up the door and talked with the police. During the entire incident, up to the point where I saw the police arrive, I did not know where the suspect was and I feared for my safety." According to Wolfe, throughout the incident the robber said nothing.

In opposition to defendants' summary judgment motion Cohen charged in his declaration the Linda Vista Road store was customarily "not very well lit" and "the only light there was on May 14, 1978 at night emanated from the inside of the store." Cohen recalled the inside lights lit only the walk in front of the store; the 7-Eleven sign on the store's roof and the 7-Eleven sign by the street were both turned off. Additionally, there were "no lights on the side of the building that were lit, nor was there any light coming from the Exxon station (which was closed) to the east or the Mexican Restaurant (which was closed) to the west." Cohen also said the store's manager had informed him prior to the shooting—during an interview for a graveyard shift opening for which Cohen had applied—the store was periodically robbed.

Cohen's counsel's investigator by declaration related in 1975 Southland experienced in excess of one robbery per store per year nationwide; in its Pacific Division (which includes San Diego), the number of robberies exceeded the corporate average. Clerk Wolfe's deposition admitted he received no training in robbery or violence prevention techniques upon being hired as the sole clerk for the 10:30 p.m. to 6:30 a.m. shift, beyond the admonition to give a robber anything he or she wanted. Jerry Lowery, Southland's head security officer, stated corporate store employees are required to participate in Southland's security training program but franchise store employees are not; Southland had no means of monitoring franchisee participation.

Finally, Cohen relied on a 1975 study funded in part by Southland which demonstrated 7-Eleven store robberies could be significantly reduced (a 30

percent reduction was achieved under the study's controlled conditions) by prevention procedures such as the strategic placement of signs announcing a low amount of cash-on-hand in the store, improved lighting in the parking lot and the training of store owners, managers and clerks in a series of robbery prevention procedures and violence prevention techniques.

The trial court granted summary judgment for defendants. Cohen appeals.

DISCUSSION

I

On a summary judgment motion, "[t]he moving party bears the burden of furnishing supporting documents that establish the claims of the adverse party are entirely without merit on any legal theory." (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) Summary judgment should be granted only where "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) " 'The affidavits of the moving party are strictly construed and those of his [or her] opponent liberally construed, and doubts as to propriety of granting the motion should be resolved in favor of the party opposing the motion.' And, conflicts in affidavits are to be resolved in favor of the nonmoving party." (*Albertini* v. *Schaefer* (1979) 97 Cal.App.3d 822, 831 [159 Cal.Rptr. 98], citations omitted. See also *Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 436-439 [74 Cal.Rptr. 895, 450 P.2d 271].) With these standards for granting a summary judgment in mind, we review the trial court's implicit determination in granting defendant's summary judgment motion that, under all the circumstances, there was no legal duty owed to Cohen to protect him from criminal activity on the 7-Eleven premises.

II

It is settled law in California that an owner or occupier of land held open for business purposes has a duty to protect visitors from the wrongful acts of third persons which threaten the safety of visitors to the premises when he or she has reasonable cause to anticipate such acts and the proba-

bility of resulting injury. (*Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793].)[1]

A legal duty to use due care is an essential element of a negligence action. (*Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d 49, 53, fn. 3.) ■ The existence of a legal duty of care is a question of law (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]), "to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court." (Prosser, Torts (4th ed. 1971) p. 206, fn. omitted.)

Defendants contend it was not foreseeable Cohen would be injured as a result of third party criminal activity at the Linda Vista Road 7-Eleven store and therefore owed Cohen no duty of care. ■ Foreseeability of the harm is of primary importance in establishing the element of duty (*Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 628 [193 Cal.Rptr. 600]; *Musgrove* v. *Ambrose Properties* (1978) 87 Cal.App.3d 44, 52 [150 Cal.Rptr. 722]). It is ordinarily a question of fact for the jury, and "decided as a question of law only if, 'under the undisputed facts there is no room for a reasonable difference of opinion.'" (*Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at p. 56.)

■ Foreseeability is not coterminous with duty. It is one of several factors to be balanced in determining whether a duty exists in a particular case. The other factors, articulated in *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], are: "the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to

---

[1]Appellate decisions of federal and other state courts are virtually unanimous in holding possessors of business premises owe a duty of care to customers to take affirmative steps to control a third party's foreseeable wrongful conduct. (See, e.g., *Kenny* v. *Southeastern Pennsylvania Transp.* (3d Cir. 1978) 581 F.2d 351, cert. den. 439 U.S. 1073 [59 L.Ed.2d 35, 99 S.Ct. 845]; *Hart* v. *Pennsylvania Turnpike Com'n* (W.D. Pa. 1977) 438 F.Supp. 573; *Morgan* v. *Bucks Assoc.* (E.D. Pa. 1977) 428 F.Supp. 546; *Foster* v. *Winston-Salem Joint Venture* (1981) 303 N.C. 636 [281 S.E.2d 36]; *Nallan* v. *Helmsley-Spear, Inc.* (1980) 50 N.J.2d 507 [407 N.E.2d 451]; *Alonge* v. *Rodriquez* (Wis. 1979) 279 N.W.2d 207; *Whelchel* v. *Strangways* (1976) 275 Ore. 297 [550 P.2d 1228]; *Jones* v. *Oberg* (1981) 52 Ore.App.601 [628 P.2d 773]; *Murphy* v. *Penn Fruit Co.* (1980) 274 Pa. Super. 427 [418 A.2d 480]; *Walkoviak* v. *Hilton Hotels Corp.* (Tex.Civ.App. 1979) 580 S.W.2d 623; *Carswell* v. *Southeastern Pa. Transp. Authority* (1978) 259 Pa.Super 167 [393 A.2d 770]; *Parslow* v. *Pilgrim Parking, Inc.* (1977) 5 Mass.App. 822 [362 N.E.2d 933]; *Morris* v. *Barnette* (Tex.Civ.App. 1977) 553 S.W.2d 648; *Atamian* v. *Supermarkets General Corp.* (1976) 146 N.J. Super. 149 [369 A.2d 38]; and *Stalzer* v. *European American Bank* (1982) 113 Misc.2d 77 [448 N.Y.S.2d 631].)

the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.''

We examine these factors in IV *infra*.

The Restatement Second of Torts, section 344, comment (f) details the factual circumstances under which a duty of care arises: ''Since the [owner or occupier of land] is not an insurer of the visitor's safety, *he [or she] is ordinarily under no duty to exercise any care until he [or she] knows or has reason to know that the acts of the third person are occurring, or are about to occur. He [or she] may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor even though he [or she] has no reason to expect it on the part of any particular individual. If the place or character of his [or her] business, or his [or her] past experience, is such that he [or she] should reasonably anticipate care- less or criminal conduct on the part of third persons, either generally or at some particular time, he [or she] may be under a duty to take precautions against it . . . .*'' (Italics added.)

### III

It is Southland's position Cohen's injury was unforeseeable because no prior *injury-producing* armed robbery occurred at the Linda Vista Road store in the preceding six years. Cohen responds by pointing to the conflict in the facts as to the frequency of prior robberies at Simmons' store. Cohen swore Simmons told him the store was periodically robbed; Simmons re- ported only one previous unarmed, noninjury robbery; Perkins, assistant director of 7-Eleven store security, reported a single prior armed robbery occurred. Such conflicts must be resolved in favor of Cohen, the nonmoving party. We presume for the purpose of determining foreseeability that several prior robberies occurred.

Even if defendants established, without question, but a single prior rob- bery occurred, the fact of a prior incident at that particular store coupled with the uncontroverted statistic on 7-Eleven robberies generally made fore- seeability of a robbery of Simmons' 7-Eleven store a triable issue of fact. It is unclear whether the one robbery or more per store per year statistic represents *armed* robberies. However, the robbery prevention study com- missioned by Southland (relied on by Cohen) notes 80 percent of the 97 7- Eleven store robberies which were the subject of the study were armed robberies. An *armed* robbery of the 7-Eleven store therefore appears to have been statistically foreseeable. It may also have been foreseeable that a cus-

tomer, present in the store during an armed robbery, would be injured by the robber.[2] ■ As the Supreme Court reminded in *Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d 49, 57-58: "[W]hat is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence." ■ The Cohen shooting fell within the scope of foreseeable harm, i.e., injury of a store customer present during a criminal act. (See *Gomez* v. *Ticor, supra,* 145 Cal.App.3d 622, 628, fn. 1.)

In *Gomez* v. *Ticor, supra,* the appeal court found a patron's injury by a third party on business premises arguably foreseeable by the premises owner. *Gomez* involved the fatal shooting of a patron of an office building's commercial parking structure. The decedent had entered the garage as an armed robbery was in progress and was shot by one of the robbers. On the basis of evidence of the general unsafe character of the neighborhood and of numerous thefts and other crimes which had occurred in the building (not in the garage) in the three years before the attack, the *Gomez* court ruled the plaintiff had raised a triable issue of fact as to foreseeability of the injury. Cohen has an even stronger argument for foreseeability than the *Gomez* plaintiff, because the self-same criminal activity at issue in the instant case which led to Cohen's injury had occurred before in the Linda Vista Road store.

The California Supreme Court in *Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d 49, evidenced a reluctance to remove foreseeability questions from the jury. The *Bigbee* court reversed a grant of summary judgment, ruling a triable issue of fact existed as to the foreseeability of the risk an automobile might crash into a telephone booth and injure its occupant, where the defendant's evidence placed the booth in a parking lot 15 feet from the side of a major thoroughfare and near a driveway. (34 Cal.3d at p. 58.) The court concluded: "Considering the case law and the circumstances of this case, this court cannot conclude as a matter of law that injury to plaintiff, inflicted by negligent or reckless third party drivers, was unforeseeable. '[J]ust as we may not rely upon our private judgment on this*

---

[2]Defendants are in error in arguing an armed robbery resulting in injury was necessarily unforeseeable because the prior robbery they admit occurred was a noninjury incident. To state this argument is to refute it. In making this point, defendants rely on cases which rule against foreseeability where prior criminal activity was wholly dissimilar to that which resulted in plaintiffs' injury. These cases actually support Cohen's position. *Wingard* v. *Safeway Stores, Inc.* (1981) 123 Cal.App.3d 37 [176 Cal.Rptr. 320], for example, involved a rape at defendant's warehouse. The court noted the dissimilarity of the crime of rape to the crime of theft; the only evidence of prior third party criminal acts relied upon was of prior thefts. The court specifically determined defendant owed no duty to protect against *rape* where there had been no previous *assaults,* and the existence of previous thefts did not give reasonable cause to anticipate an assault. Under the *Wingard* analysis, the defendants owed a duty to protect against an *injury-producing armed robbery* where there had been a previous *armed robbery* but not where there had only been previous acts of vandalism.

*issue, so the trial court may not impose its private judgment upon a situation, such as this, in which reasonable minds may differ.'"* (*Id.*, at p. 59, citation omitted and italics added.)

Added to the allegation of previous robberies of Simmons' store and the statistic demonstrating the alarming frequency of robberies in 7-Eleven stores generally, and a general reluctance to remove foreseeability questions from the jury, is a further reason for finding a triable issue of fact as to the foreseeability of injury here. In the very operation of an allnight convenience store, defendants may be said to have created "an especial temptation and opportunity for criminal misconduct," thus increasing the foreseeability of injury resulting from third party misconduct in the early morning hours. (Prosser, Torts (4th ed. 1971) p. 174.)

Cohen makes an unsupported assertion a robbery is five times more likely to occur at night than in the daylight hours. However, common experience and reason support the conclusion more robberies occur at night; fewer people are around to interfere with or witness the crime. Darkness conceals the robber's getaway. A 24-hour convenience store makes an attractive target for night time criminal activity. *Gomez* v. *Ticor, supra,* 145 Cal.App.3d at page 629, held temptation to and opportunity for crime was created by operation of a parking structure thus increasing foreseeability of criminal attack within such structure.

Finally, as the *Gomez* court so aptly stated: "The California Supreme Court has recently reiterated that ' "foreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct." ' [Citations.] Parking structures are relatively new fixtures in 'the setting of modern life.' Accordingly, we are not bound by any specific precedent in determining whether attacks on patrons of these structures are foreseeable. Rather, this determination must come as the result of a realistic appraisal of the foreseeability of crime in any such structure; such an appraisal is the jury's task." (*Ibid.*) Convenience stores are also "relatively new fixtures 'in the setting of modern life.' " (*Ibid.*) As in *Gomez,* a jury must in light of all the facts, realistically appraise whether customer injury during the course of a Linda Vista Road 7-Eleven store robbery was foreseeable.

## IV

Defendants contend, assuming arguendo Cohen's injury was foreseeable, the other factors in the duty analysis weigh adversely to him and dictate a no duty finding. Defendants' summation of the relevant case law is correct.

■ Whenever the duty sought to be imposed upon the defendant would place an extremely onerous burden on both the defendant and the community, and where the defendant is not morally culpable, and where the proposed duty and the measures to be applied in discharge of the duty defy exact delineation and suffer from inherent vagueness, courts have declined to impose a duty when prior similar events did not make the harm highly foreseeable. (See *Gomez* v. *Ticor, supra,* 145 Cal.App.3d at pp. 631-632; *Totten* v. *More Oakland Residential Housing, Inc.* (1976) 63 Cal.App.3d 538, 545 [134 Cal.Rptr. 29]; *Rogers* v. *Jones* (1976) 56 Cal.App.3d 346, 352 [128 Cal.Rptr. 404].)

This case, for the following reasons, does not fall within the factual boundaries of cases such as *Rogers* v. *Jones, supra,* and *7735 Hollywood Blvd. Venture* v. *Superior Court* (1981) 116 Cal.App.3d 901 [172 Cal.Rptr. 528], which require repeated, prior similar incidents—i.e., harm that is *highly* forseeable—before a duty may be imposed. First, imposition of a duty to take reasonable precautions against early morning robberies of the Linda Vista Road store would not place an extremely onerous burden on both the defendant and the community, as defendants suggest. Defendants characterize Cohen's insistence on such a duty as tantamount to a requirement they hire full-time armed security guards in the hope of deterring nighttime crime. They argue imposing such a duty would result in 7-Eleven franchises' economic ruin, for "[i]t takes no elaborate economic analysis to conclude that small, independently-owned stores run on thin profit margins."

Defendants misapprehend the ramifications of a duty finding here. Imposition of a duty to make Simmons' store reasonably safe against criminal activity is not coincident with requiring the hiring of armed guards. Rather, a jury could determine the duty was more than adequately fulfilled by the less onerous, relatively inexpensive robbery and/or violence deterrence measures described in the Southland-commissioned study, e.g., making sure the store itself and its parking lot were well illuminated, and training store employees in methods for dealing with in-progress robberies. Such measures contributed to a 30 percent reduction in store robberies over the course of the Southland-commissioned study.

The community, in fact, would benefit by imposition of a duty here. As Cohen suggests, keeping a store open in the late evening and early morning hours invites criminal activity. ■ It is only fair and equitable the reasonable costs of protecting store patrons from criminal activity be borne by the owners, the operators and indirectly the patrons of convenience stores and not by the community at large. It is also not unfair that patrons pay a few cents more for items they purchase from such a store and gain the

assurance of reasonable protection against criminal activity while shopping there, rather than allow the emotional and physical burden of a criminal attack to fall on the store patron who inadvertently finds himself or herself in the middle of a robbery invited by the store's failure to employ minimal crime deterrence measures. (See *Butler* v. *Acme Markets, Inc.* (1982) 89 N.J. 270 [445 A.2d 1141].)

Second, implicit in the foregoing discussion is disagreement with defendants' position the measures to be applied in discharge of the proposed duty defy exact delineation and suffer from inherent vagueness. True, the duty may be fulfilled by various means, and the sufficiency of these means may often be decided by "a lay jury, after the fact." (*7735 Hollywood Blvd. Venture* v. *Superior Court, supra,* 116 Cal.App.3d at p. 905.) There is no reason, however, to doubt the capability of the jury to carry out instructions—if such defense is tendered—and limit its inquiry to deciding whether the requisite minimal duty has been satisfied. (*Gomez* v. *Ticor, supra,* 145 Cal.App.3d at p. 633.)

Cohen does not contend the injury of a patron in the course of an armed robbery of the Linda Vista Road 7-Eleven was highly foreseeable. He has alleged—and we have taken as true for the purpose of this appeal— at least several prior robberies occurred at Simmons' store. Thus, the degree of foreseeability here is greater than was present in *Gomez,* where the plaintiff did not allege a single instance of prior assault on the premises. *Gomez* held the foreseeability there alleged, if confirmed by a jury, would support a minimal duty only to provide the "first line of defense" against a criminal attack, not vague and onerous duties directed at preventing an attack. In the case at bench, providing the "first line of defense" is all that is at issue. We therefore hold if Cohen proves, as he has alleged, his injury was foreseeable, defendants owed him a minimal duty of care.

Cohen has defined the duty he proposes and shown the effectiveness of means to discharge it. The Southland-commissioned study demonstrates if defendants take certain measures defendants will reduce the incidence of robberies and thereby afford store patrons reasonable protection.

V

Defendants have not conclusively (as a matter of law) demonstrated they have fulfilled a minimal duty of care and are therefore entitled to a judgment as a matter of law. From the moving papers it appears Southland has instituted an extensive security training program and 7-Eleven stores regularly use security devices designed to deter robberies. Cohen introduced evidence, however, that Wolfe, the on-duty clerk the night of the incident,

received no security training. Additionally, defendants have not alleged the Linda Vista Road store implemented the customary 7-Eleven store security measures, such as a balanced lighting system allowing store clerks to observe outside activities and persons outside to view activities within. The Southland-commissioned study showed improved parking lot lighting contributed to a decline in 7-Eleven store robberies. Yet, there was directly conflicting evidence regarding store lighting on the night of the incident. Cohen recalled the store was "not very well lit" and on the night in question the parking lot was dark, the 7-Eleven roof and street signs were turned off, and the only light in the general vicinity emanated from inside the store. Wolfe insisted the parking lot was illuminated but did not detail the source(s) of the illumination.

The adequacy of defendants' measures to protect store patrons from assault or other threatening behavior of would-be robbers is therefore also a factual issue to be resolved by a jury.

## VI

Lastly, Cohen contends defendants have not established, as a matter of law, Wolfe had no duty *to rescue* Cohen after the shooting. ▮ The general rule declares a person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to such a duty. (Rest.2d Torts, § 314, p. 116; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 554, p. 2821.) There was no claim of a special relationship between Wolfe and Cohen which gave rise to the duty to rescue. Wolfe stated in his declaration he feared for his life when the robber displayed the weapon and Cohen grabbed the robber from behind. After retreating to the rear office to avoid being shot, Wolfe continued to fear for his life. He thought the robber was still in the store. In light of Wolfe's patently reasonable fear for his own safety we decline to depart from the general no-duty rule. The trial court properly entered summary judgment on Cohen's fourth cause of action for Wolfe's charged negligent failure to rescue.

### DISPOSITION

The summary judgment is reversed as to all but Cohen's fourth cause of action upon which the summary judgment is affirmed.

Wiener, J., and Work, J., concurred.