[Civ. No. 45903. First Dist., Div. Two. Sept. 1, 1981.]

SHARON KWAITKOWSKI, Plaintiff and Appellant, v.
SUPERIOR TRADING COMPANY et al., Defendants and
Respondents.

COUNSEL

Edwin Train Caldwell, Caldwell & Johnson, Victoria J. De Goff and De Goff & Sherman for Plaintiff and Appellant.

Wright, Nolan, Akin & Spitzig, Wright, Nolan & Akin and Vincent S. Wright for Defendants and Respondents.

OPINION

TAYLOR, P. J.—Ms. Kwaitkowski, a former tenant, appeals from a judgment of dismissal after the trial court sustained without leave to amend the demurrer of the landlords[1] to her fourth amended complaint. She sought damages for personal and pecuniary injuries sustained when she was raped, assaulted and robbed in the dimly lit lobby of a building with a defective front door lock in a high crime area, after the landlords had notice of similar and other crimes committed on another tenant in a common hallway. For the reasons set forth below, we have concluded that the judgment must be reversed.

As the demurrer was sustained, the following allegations of the fourth amended complaint must be taken as true (*O'Hara* v. *Western*

---

[1]The landlords were Superior Trading Company, Burke H. Chung and several Does.

*Seven Trees Corp.* (1977) 75 Cal.App.3d 798 [142 Cal.Rptr. 487]; *Stanson* v. *Brown* (1975) 49 Cal.App.3d 812, 814 [122 Cal.Rptr. 862]).

Ms. Kwaitkowski was a tenant of an apartment building owned, operated, maintained and controlled by the landlords at 120 Ellis Street in San Francisco, a high crime area. On July 7, 1976, Ms. Kwaitkowski was accosted in the building lobby, assaulted, battered, raped and robbed by a nonresident. The common areas of the building were dangerous and unsafe. The lock on the front door that led to the lobby area was defective; also, some lights were missing and fire hoses unwound. As a result, strangers easily gained access to the lobby.

The landlords had actual and constructive notice of dangers to the tenants as a result of the high crime area, the unsafe conditions, and the ability of strangers to enter. Within one month before the attack, Ms. Kwaitkowski had notified the building manager (manager) that nonresidents were entering the building and pandering in the lobby. Ms. Kwaitkowski also had informed the manager that she was fearful for her personal safety because of a prior incident of a tenant who was attacked and robbed on the premises and because the front door did not lock effectively. Five months before July 7, other tenants had complained to the landlords and the manager that they were in fear of their physical safety as well as in fear of losing personal property because strangers could easily enter the building. Within two months before July 7, after another tenant had been attacked, assaulted and robbed in a common area of the building, the landlords met with some of the tenants, including Ms. Kwaitkowski. The landlords acknowledged that strangers had easy access. However, the landlords did nothing to repair the front entrance door, which did not lock properly; in addition, the landlords failed to properly maintain adequate lighting in the common entrance lobby.

The applicable law was summarized by this court (Div. Four) in *O'Hara* v. *Western Seven Trees Corp., supra,* 75 Cal.App.3d 798, at pages 802-803, as follows: "Generally, a person is liable for injuries caused by his failure to exercise reasonable care under the circumstances. [Citations.] Traditionally, a landlord had no duty to protect his tenants from the criminal acts of others, but an innkeeper was under a duty to protect his guests. [Citations.] But in recent years, the landlord-tenant relationship, at least *in the urban, residential context*, has given rise to liability under circumstances *where landlords have failed to take reasonable steps to protect tenants from criminal activity*. [Citations.]

It has been held that *since only the landlord is in the position to secure common areas, he has a duty to protect against types of crimes of which he has notice and which are likely to recur if the common areas are not secure.* Liability does not make the landlord an insurer of the tenants' safety; the duty is merely to exercise reasonable care. [Citations.]"

Relying on Restatement Second of Torts, section 302B,[2] this court in *O'Hara, supra*, noted at page 804, that the criminal act of a third person is a superseding cause unless the landlord actor at the time of his negligent conduct realized or should have realized the likelihood that his conduct created an opportunity for the commission of crimes and that a third person might avail himself of the opportunity, relying on Restatement Second of Torts, sections 448 and 449, set forth below, so far as pertinent.[3]

In *O'Hara*, the rape occurred in the tenant's apartment. Justice Christian held that the landlord's action or failure to act was the proximate cause of the tenant's injury, as the landlord had notice of the "risk of sexual assault." Relying on *Kline v. 1500 Massachusetts Avenue Apartment Corp.* (D.C. Cir. 1970) 439 F.2d 477, he held that, in an urban residential context, the landlord-tenant relationship gives rise to liability under circumstances where landlords have failed to take reasonable steps to protect the tenants from criminal activity.

The landlords here argue that *O'Hara* is extreme and factually distinguishable as the *O'Hara* landlord was aware of prior incidents of rape by a particular suspect, and had composite drawings of the suspect as well as a general description of his modus operandi. Here, the land-

---

[2]Section 302B: "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal."

[3]Section 448: "The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, *unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime*" (italics added).

Section 449: "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, *or criminal* does not prevent the actor from being liable for harm caused thereby" (italics added).

lords admit their knowledge of the prior assault and robberies but maintain that Ms. Kwaitkowski's complaint has not set forth facts indicating the requisite foreseeability to meet the tests of *Totten v. More Oakland Residential Housing, Inc.* (1976) 63 Cal.App.3d 538, 543 [134 Cal. Rptr. 29], and *O'Hara, supra,* 75 Cal.App.3d 798. In *Totten,* this court held that, in the absence of allegations of prior similar incidents in the building, a landlord is not required to take precautions against a sudden attack, from a third person, that he has no reason to anticipate. In *Totten,* the plaintiff was visiting a tenant when she was injured by pistol shots during a fight between two strangers in the laundry room. Since the plaintiff was not a tenant, no special relationship was established. She also had failed to allege sufficient facts to demonstrate that the landlord could have foreseen the criminal conduct in question. We concluded, therefore, that imposition of liability on the landlord would be unfair and against public policy.

Contrary to the landlords' assertions, our conclusion in *Totten* is not determinative of the instant case, which involves the special relationship of landlord and tenant. In *Totten,* 63 Cal.App.3d at page 546, we noted that where there is a special relationship between the parties, there is a "common law duty to protect against the criminal attack of third persons."[4]

The landlords further argue that their demurrer was properly sustained because, unlike *O'Hara, supra,* 75 Cal.App.3d 798, they had no knowledge of a particular assailant and, therefore, they had "insufficient knowledge to create a duty to defend" against the particular risk of sexual assault by a stranger.

The landlords' contention overlooks the fact that they had prior notice of a tenant who was assaulted and robbed two months before Ms. Kwaitkowski was assaulted, robbed and raped. The landlords had notice that their apartment building was in a high crime area and that the lock of the lobby entrance door was defective. They also had notice that with the defective door, strangers had easy access to the premises and that the tenants were in fear of their personal safety. Under these circumstances, the danger to Ms. Kwaitkowski's personal safety was fore-

---

[4]The landlords also rely on *Goldberg v. Housing Auth. of Newark* (1962) 38 N.J. 578 [186 A.2d 291, 10 A.L.R.3d 595]. However, as Ms. Kwaitkowski correctly points out, *Goldberg* did not involve a landlord's liability for a reasonably foreseeable crime perpetrated on a tenant; rather, *Goldberg* held that the landlord had no duty to provide police protection for an invitee to a housing project.

seeable. We cannot agree that simply because the prior tenant was not also raped, the landlords here should be absolved from liability. Whether a given criminal act is within the class of injuries which is reasonably foreseeable depends on the totality of the circumstances and not on arbitrary distinctions between assault, rape, murder, robbery. Rape is often characterized as a form of aggravated assault. Since the landlords had notice of the prior assault and robbery and they had failed to take precautions to secure the building, the crimes alleged in the instant case were reasonably foreseeable under the circumstances.

Foreseeability does not require prior identical or even similar events (*Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741 [87 Cal. Rptr. 376, 470 P.2d 360]). In *Musgrove* v. *Ambrose Properties* (1978) 87 Cal.App.3d 44 [150 Cal.Rptr. 722], the plaintiff was permitted to recover for personal injuries sustained when she was struck by a bicycle ridden by a boy on the premises of a shopping center. The defendant knew that bicycles were ridden on his premises but there was no evidence that a bicycle had struck anyone prior to the injury suffered by plaintiff. The Court of Appeal noted that an owner of land held open to the public for business purposes is under a duty to take affirmative action to control the wrongful acts of third persons which threaten the safety of visitors to the premises where he has reasonable cause to anticipate such acts and the probability of injury resulting therefrom. The court held that the foreseeability was a question of fact, and noted that the evidence permitted a finding that the chance of a bicyclist striking the pedestrian was foreseeable, unless precautions were taken. *Musgrove* is particularly apt here, as Ms. Kwaitkowski was attacked in a common areaway under the control of the landlord.

Our research has disclosed no California case precisely in point. The weight of authority in other jurisdictions, however, indicates that under analogous circumstances, a landlord is liable even for the first crime of a particular type.

*Sherman* v. *Concourse Realty Corporation* (1975) 47 App.Div.2d 134 [365 N.Y.S.2d 239], is on all fours with the instant case. The tenant sustained personal injuries when he was assaulted and robbed by an unidentified assailant in the lobby of a multiple dwelling. For a week prior to the incident, the lock on the front entrance door was in a defective condition because the landlord had removed the cylinder for repair. There had been many instances of crime committed in the building and

the surrounding area. The trial court dismissed the complaint for insufficient evidence of proximate cause.

In reversing for a new trial on the issue of whether or not the landlord's failure to repair the broken lock on the lobby door was the proximate cause of the assault and robbery, the appellate court reasoned that proximate cause "represents a policy decision by which it is determined how far removed an *effect* may be from its *cause in fact* for the actor nevertheless to be held legally responsible" (p. 244). *Sherman*, like *O'Hara*, cited *Kline, supra*, 439 F.2d 477, and the Restatement Second of Torts, section 449.

*Spar* v. *Obwoya* (D.C. 1977) 369 A.2d 173, is even more apposite. In *Spar*, the tenant was robbed and shot in a common hallway. The landlord maintained that since the tenant's injury was caused by the first robbery with a shooting ever committed on the premises,[5] he did not have the requisite notice that made such an occurrence reasonably foreseeable. In *Spar*, as here, the building was in a high crime area; the landlord had been notified that the front door lock was broken but had not repaired it; and that strangers could easily gain access to the hallway. The court concluded that the evidence of the prior incidents, taken as a whole, was sufficiently related to the robbery of the tenant to put the landlords on notice of the likelihood of unauthorized entry into the building by persons with criminal intent. The *Spar* court, at page 177, quoted from *Kendall* v. *Gore* (D.C. Cir. 1956) 236 F.2d 673, 682: "'A defendant need *not have foreseen the precise injury*, nor "should [he] *have had notice of the particular method*" in which a harm would occur, if the possibility of harm was clear to the ordinary prudent eye'" (italics added).

In *Johnston* v. *Harris* (1972) 387 Mich. 569 [198 N.W.2d 409], the tenant was assaulted, robbed and mugged by a stranger in the poorly lighted, unlocked vestibule. Although there was no evidence of prior attacks, the Michigan Supreme Court concluded that in a high crime area, it was reasonably foreseeable that inadequate lighting and unlocked doors would create conditions making it more likely that criminal activity might take place. Subsequently, in *Samson* v. *Saginaw Professional Bldg., Inc.* (1975) 393 Mich. 393 [224 N.W.2d 843], a landlord was held liable for failing to provide adequate security despite

---

[5]The prior incidents were a burglary of an individual apartment by forcible entry from the common hallway and one knifepoint robbery in the hallway.

the fact that no prior incident had occurred in the building for 15 months before the assault. In *Samson*, a secretary was stabbed by a patient while in an elevator in the state mental health clinic. Both *Johnston* and *Samson* relied on Restatement Second of Torts, section 302B, set forth above at footnote 2, page 327.

In *Holley* v. *Mt. Zion Terrace Apartments, Inc.* (Fla.App. 1980) 382 So.2d 98, the court held that the intentional act of a rapist murderer did not constitute an independent intervening cause which served to insulate the landlord from liability. There, the tenant was raped and murdered in the common areaway of an apartment complex. The subsequent wrongful death action was predicated on the landlord's negligence in failing to provide reasonable security measures in the buildings' common areas.

The landlord's defense in *Holley, supra*, was similar to that of the landlords here, namely, that: 1) there was no duty to provide protection against criminal conduct; and even if so, 2) any arguable breach of duty was not the proximate cause of death. In rejecting this argument, the Florida court stated, in language equally apt here: "It is well-established that if the reasonable possibility of the intervention, criminal or otherwise, of a third party *is the avoidable risk of harm which itself causes one to be deemed negligent*, the occurrence of that very conduct *cannot* be a superseding cause of a subsequent misadventure." (382 So.2d p. 101; italics added.) The Florida court held that: 1) evidence concerning the past incidents and therefore foreseeability of violent crime on the landlord's premises raised substantial issues of fact; 2) the third party criminal act of the rapist murderer was not an intervening cause relieving the landlord of liability; and 3) the question of the landlord's alleged breach of duty as the legal cause of injury could not be determined on a summary judgment.

In *Trentacost* v. *Brussel* (1980) 82 N.J. 214 [412 A.2d 436], the tenant sought to recover for injuries sustained when she was mugged in the hallway of an apartment building that had no lock on the front door. The New Jersey Supreme Court held that: 1) the landlord was negligent in failing to secure the entrance to the common areas of the building; 2) the landlord was liable to the tenant for injuries attributable to his breach of implied warranty to provide adequate security; and 3) the landlord's violation of regulations requiring security constituted evidence of negligence. Damages were predicated on tort as well as on a contract theory of liability.

In *Warner* v. *Arnold* (1974) 133 Ga.App. 174 [210 S.E.2d 350], the landlord had notice of prior break-ins; four months earlier, the tenant requested an additional door lock; the landlord did nothing. In finding the landlord liable for damage caused when a burglar broke into the apartment and set fire to it, the court stated at page 354: "*The immediacy of the connection between the inadequate . . . lock*, the *landlord's notice of this inadequacy*, either actual or constructive, and the burglary and arson, compels us to hold that *the landlord is not insulated as a matter of law, and that the jury should properly pass on the questions* of agency, notice, foreseeability, intervening causation, assumption of risk, as well as the suitability of the lock in question" (italics added).

Contrary to the landlords' argument, a finding of potential liability in the present case does not require an expansion of established law. Rather, it only requires the application of the principles of *O'Hara, supra,* 75 Cal.App.3d 798, and the other authorities discussed above.

The landlords also argue that under section 315, Restatement Second of Torts,[6] the landlord has no duty to protect another from a criminal act by a third person unless a special relationship is found to exist. We agree with Ms. Kwaitkowski that the applicable provisions of the Restatement are sections 302B and 449, quoted above. Recently in *Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642], our Supreme Court applied section 449 to hold that a bank, which allowed withdrawals from an estate account on the signature of only one coexecutor, may be held liable for negligence. The court reasoned that even though the coexecutor's intentionally tortious and criminal conduct caused the loss to the estate, the bank was not insulated from liability for its negligent conduct in permitting the withdrawal on only one signature.

Finally, the landlords cite *7735 Hollywood Blvd. Venture* v. *Superior Court* (1981) 116 Cal.App.3d 901 [172 Cal.Rptr. 528]. In that case, a tenant was raped in her apartment by an intruder who forced entrance into it. Her complaint sought compensatory and punitive damages on the basis of a combination of the landlord's knowledge of burglary and rape in the "general area, vicinity and neighborhood" in recent months

---

[6]Section 315 provides: "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right of protection."

and the landlord's failure to replace a burned-out light bulb outside her apartment. In sustaining the demurrer, the appellate court noted that the complaint failed to allege that the property itself was defective in any regard or to plead sufficient facts to establish a duty on the part of the landlord, as no causal connection was established between the landlord's alleged wrongful act and the injury.

The *Hollywood* case is inapposite, as it involved only the landlord's duty to install and maintain lighting outside the plaintiff's apartment door for security purposes. The instant case involves a defective lock on the lobby door that provided easy access to strangers. As the court noted in *Hollywood*, the utility of a light outside the door was questionable. Here, a properly functioning front door lock is a vital first line of defense. In addition, in *Hollywood*, the complaint alleged that the landlord had knowledge that: 1) a violent crime had occurred in the neighborhood; and 2) some of these crimes, according to media accounts, were committed by the "West Side rapist." The appellate court noted that the landlord had no more knowledge than any Los Angeles citizen concerning violent crimes and his conduct did not place the tenant in any particular peril unique from that of any other person. The instant complaint on the other hand alleged a recent attack on another tenant in a common hallway and the tenants' complaints about their personal safety because of the defective lock. Thus, given the neighborhood, the assault on other tenants was both probable and predictable.

Thus, the landlords' knowledge and failure to repair the lock affirmatively placed Ms. Kwaitkowski in danger of injuries of the same general type as those sustained by the prior tenant.

We conclude, therefore, that the landlords' duty to Ms. Kwaitkowski was based on: 1) the special relationship; 2) the foreseeability of the criminal attack; and 3) the warranty of habitability implicit in the lease contract.

The judgment of dismissal is reversed.

Rouse, J., and Miller, J., concurred.

A petition for a rehearing was denied October 1, 1981, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied November 12, 1981.